UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MOHAMMAD HASAN ALSYOUF, | ) | NO. EDCV 09-01828 SS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM DECISION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff ("Plaintiff") is seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Supplemental Security Income. Alternatively, he asks for a remand. The parties have consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the Court's Case Management Order, the parties filed a joint stipulation ("Jt. Stip.") on October 17, 2007. For the reasons stated below, the decision of

the Commissioner is REVERSED and the case is REMANDED for further proceedings consistent with this decision.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

|   |     |                                                                  |
|---|-----|------------------------------------------------------------------|
|   | (2) | Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three. |
|   | (3) | Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four. |
|   | (4) | Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five. |
|   | (5) | Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. |

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity

("RFC"),[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

---

[2] Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

4

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## DISCUSSION

### A. The ALJ Erred By Concluding At Step Two That Plaintiff's Mental Impairment Was "Non-Severe"

Plaintiff argues that the ALJ erred by failing to properly assess Plaintiff's residual functional capacity. (Jt. Stip. at 2-3). In particular, Plaintiff contends that the ALJ ignored records regarding Plaintiff's mental impairment. (Id. at 2-5). For the reasons discussed below, the Court finds that the ALJ failed to properly assess Plaintiff's mental health impairment.

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(stating that the step two inquiry is a de minimis screening device to dispose of groundless claims)(quoting Smolen, 80 F.3d at 1290). An impairment is not severe only if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen, 80 F.3d at 1290 (internal quotations and citations omitted).

The ALJ here applied more than a de minimis test when he determined that Plaintiff's mental impairment was not severe. Moreover, he failed to follow the Secretary's own regulations governing the evaluation of mental impairments, as described below.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations.[3] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998)(citing 20 C.F.R. § 416.920a)(per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the plaintiff

---

[3] These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed assessment. Social Security Ruling 96-8P, 1996 WL 374184 at * 4.

establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2)-(4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920a(d)(2).  Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding he plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

    The regulations describe an impairment as follows:

> A physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (noting that the existence of a medically determinable physical or mental impairment may only be established with objective medical findings) (citing Social Security Ruling 96-4p, 1996 WL 374187 at *1-2).

In a March 2004 report, Marilyn Neudeck-Dicken, a psychologist and a Board Certified expert in Traumatic Stress, evaluated Plaintiff's posttraumatic stress disorder. (AR 234). She concluded that Plaintiff's condition was not "permanent and stationary" and that he would need therapeutic support over the course of many years. (AR 236). On May 29, 2003, Dr. Neudeck-Dicken assessed Plaintiff with a GAF of 41-50, indicative of serious symptomatology and limitations. (AR 238-243). In 2004, Dr. McDaniel, a psychiatrist, completed an evaluation and report of Plaintiff. Dr. McDaniel noted that Plaintiff's treating doctor had prescribed the antidepressant Remeron, anti-anxiety medication, i.e., Xanax, as well as Gabitril and Effexor, another antidepressant. (Id. at 338). Dr. McDaniel concluded that Plaintiff's psychiatric disability was "minimal to very slight", unless Plaintiff returned to retail position which would cause it to rise to a moderate to severe level. (Id. at 350-351).

Dr. Joel Frank, a psychiatrist, evaluated Plaintiff on May 17, 2005, with the assistance of psychologist Gale J. Schuler. (AR 396). Dr. Frank diagnosed Plaintiff with Post-Traumatic Stress Disorder, Chronic. Notably, Dr. Frank did not conclude that this disorder was resolved. Dr. Frank also diagnosed Plaintiff with a

depressive disorder. (AR 406). Although Dr. Frank concluded that Plaintiff's limitations were "slight to moderate", he also found that Plaintiff would require access to future psychiatric treatment and should have access to psychotropic medication management.

These objective medical findings indicate that Plaintiff suffered from a mental health impairment. See 20 C.F.R. § 416.927(a)(2) ("Medical opinions . . . that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including symptoms, diagnosis and prognosis," are evidence that a plaintiff may submit in support of his disability claim). The ALJ, however, failed to follow the Secretary's regulations for evaluating mental impairments. Moreover, although the step-two analysis has been recognized as a de minimis test designed to identify and dismiss only frivolous claims, the ALJ found that Plaintiff's mental impairment was not severe based in part on the fact that Plaintiff had not suffered any psychiatric hospitalizations. (AR 49). A claimant may suffer from a mental impairment without having been hospitalized for that limitation. Thus, it appears that the ALJ applied more than a de minimis test and his conclusion at step two that Plaintiff does not suffer from a severe mental impairment was error. See 20 C.F.R. § 416.920a(b)(1).

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Because the ALJ

9

improperly evaluated Plaintiff's mental health impairment at step two, the case must be remanded to remedy this defect.

Upon remand, the ALJ must conduct the supplemental evaluation of mental impairment evidence. Normally, the ALJ must first determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). However, this Court has determined that there is objective medical evidence that Plaintiff suffers from a mental impairment relevant to his ability to work. Thus, the ALJ need not address this question. Accordingly, the ALJ must only complete the remaining inquiries required in the supplemental evaluation of mental impairment evidence.[4]

\\
\\
\\

---

[4] Specifically, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2)-(4). Next, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). If the mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding he plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

**B.    The ALJ Erred By Relying Solely On The Grids To Determine Whether Plaintiff Is Disabled**

To determine if substantial gainful work exists for the claimant, an ALJ may use the Medical-Vocational Guidelines ("grids") to consider claimants with substantially uniform levels of impairment. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). When the grids do not completely describe the claimant's abilities and limitations, such as when the claimant has both exertional and significant nonexertional limitations (as is the case in the instant claim), the grids are inapplicable and the ALJ must take the testimony of a VE. Id.; see also Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).

Examples of non-exertional limitations where use of the Grids may be inappropriate are: poor vision, see Tackett v. Apfel, 180 F.3d 1094, 1101-02 (9th Cir. 1999); pain, see Perminter v .Heckler, 765 F.2d 870, 872, (9th Cir. 1985); and "'mental, sensory, postural, manipulative, or environmental (e.g., inability to tolerate dust or fumes) limitations.'" Burkhart v. Bowen, 856 F.2d 1335, 1340-41 (9th Cir. 1988) (quoting Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 579 (9th Cir. 1988)). When a claimant has "significant non-exertional limitations," the ALJ cannot rely solely on the grids. Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007); see also Burkhart, 856 F.2d at 1340 ("the grids are inapplicable [w]hen a claimant's non-exertional limitations are sufficiently severe so as to significantly limit

the range of work permitted by the claimant's exertional limitations." )(internal quotations omitted).

In Dr. Adeyemo's report, analyzing Plaintiff's mental impairments, the doctor concluded:

> Claimant has difficulty understanding, retaining and executing simple instructions because of moderate impairment of his concentration and short term memory . . . He will have difficulty responding appropriately to co-workers, supervisors and the public because of the significant Depressive and Anxiety Spectrum symptoms. For the same reason [h]e will have difficulty responding appropriately to usual work situations.

(AR 30).

In Dr. McDaniel's 2004 report, the doctor stated:

> I would preclude this individual from returning to his usual and customary job as returning to a retail position would cause his symptomatology to rise to a moderate to severe level creating incapacity for working in a retail situation. Outside a retail situation, his symptomatology would be considered minimal to very slight.

(AR 350-351).

The ALJ, after consulting the grids, found that Plaintiff could perform the "full range of sedentary work." (AR 56). However, given the significant non-exertional limitations described above, it was error for the ALJ to rely solely on the grids. Upon remand, in addition to reevaluating Plaintiff's RFC with the finding that Plaintiff's mental impairment is severe, at step two, the ALJ must obtain testimony from a vocational expert, who can consider the record evidence concerning both exertional and non-exertional limitations of Plaintiff.

**C.    The ALJ Failed To Provide Clear And Convincing Reasons To Reject Plaintiff's Subjective Pain Testimony**

The ALJ may reject a plaintiff's testimony if he or she makes an explicit credibility finding that is "supported by a specific, cogent reason for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (internal citations omitted). Unless there is affirmative evidence showing that the plaintiff is malingering, the ALJ's reasons for rejecting the plaintiff's testimony must be "clear and convincing." Lester, 81 F.3d at 834. Moreover, the ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).

1 | Plaintiff provided testimony regarding his symptoms and pain.
2 | (AR 550-561). Plaintiff testified that he has concentration
3 | problems (AR 550-51); pain in his neck, low back and left leg (AR
4 | 551-52); must lay down for 4-6 hours each day (AR 552-53);
5 | decreased memory, concentration, and fear of people (AR 557); he
6 | suffers from nightmares and flashbacks of the shooting (AR 558);
7 | and that after 3 hours of sitting/standing/walking, he has to lay
8 | down for 1-2 hours. (AR 560). The ALJ relied solely on the reason
9 | that Plaintiff's daily activities were inconsistent with his
10 | statements regarding his limitations. (AR 50). This single reason
11 | for rejecting Plaintiff's testimony was insufficient to reject the
12 | entirety of Plaintiff's subjective complaints and does not qualify
13 | as a "clear and convincing reason." The evidence regarding
14 | Plaintiff's daily activities was inconsistent and not a convincing
15 | reason, on its own, to reject his testimony. Accordingly, the
16 | action must be remanded on this ground as well.
17 | \\
18 | \\
19 | \\
20 | \\
21 | \\
22 | \\
23 | \\
24 | \\
25 | \\
26 | \\
27 | \\
28 | \\

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this decision. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 21, 2011


　　　　　　　　　　　　　　　　　　　　/S/
　　　　　　　　　　　　　　　　　SUZANNE H. SEGAL
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE